IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BONNIE S. COATS,  Case No. 6:16-cv-01849-MC

          Plaintiff,

    v.  OPINION AND ORDER

NANCY A. BERRYHILL,
Commissioner of Social Security
Administration,

          Defendant.

KATHERINE L. EITENMILLER
474 Willamette St., Suite 200
Eugene, OR 97401
    Of Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-1011

SARAH MOUM
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Of Attorneys for Defendant

1- OPINION AND ORDER

MCSHANE, District Judge:

Bonnie Sue Coats ("Coats") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

*The Application*

Born in 1961, Coats was 46 years old on the disability onset date. Tr. 190. She has a GED. Tr. 195. She previously worked at a number of jobs, including letter carrier and retail clerk. *Id.*

Coats protectively filed for SSI on June 21, 2012, alleging disability as of June 15, 2007, due to back problems, IBS, bipolar disorder, anxiety, and right wrist and shoulder problems. Tr. 29, 194. Her application was denied initially and upon reconsideration. Tr. 29. A hearing was held on November 17, 2014 before an Administrative Law Judge ("ALJ"). Coats was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 48-90. On January 30, 2015, the ALJ issued a decision finding Coats not disabled. Tr. 26-42. Coats timely requested review of the ALJ's decision and, after the Appeals Council denied her request for review, filed a complaint in this Court. Tr. 8-10.

*The Sequential Analysis*

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining

whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011);

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanri*, 262 F.3d 949, 953 (9th Cir. 2001). The Commissioner bears the burden of proof at step five. *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 2001). At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

*The ALJ's Findings*

At step one of the sequential evaluation process, the ALJ found that Coats had not engaged in substantial gainful activity after the alleged onset date, June 15, 2007. Tr. 31.

At step two, the ALJ determined Coats had the following severe impairments: irritable bowel syndrome; multi-level lumbar degenerative disc disease; right shoulder rotator cuff tear; obesity; carpal tunnel syndrome/right wrist scapholunate ligament disruption; bipolar I disorder; anxiety disorder, not otherwise specified; alcohol dependence; and opiate dependence. *Id.*

At step three, the ALJ found that Coats' impairments, by itself or in combination, did not meet or equal the requirements of a listed impairment. Tr. 32-35. Because Coats did not establish disability at step three, the ALJ continued to evaluate how Coats' impairments affected her ability to work during the relevant period. The ALJ found Coats had the residual functional capacity ("RFC") to perform less than the full range of light work, and that Coats could:

> [o]ccasionally lift and/or carry twenty pounds and frequently ten pounds. The claimant can sit, stand and/or walk six hours out of an eight-hour workday with normal breaks. A bathroom must be on premises. The claimant must be allowed to alternate sitting or standing positions as needed throughout the day while remaining on task. The claimant is limited to no more than frequent climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to no more than occasional climbing of ladders, ropes or scaffolds.
>
> The claimant (a right hand dominant individual) is limited to no more than frequent handling and fingering on the right and no more than occasional overhead reaching with the right. She must avoid concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She must avoid even moderate exposure to workplace hazards such as operational control of moving machinery, hazardous machinery, and unprotected heights. The claimant is limit[ed] to only occasional interaction with coworkers and supervisors and no interaction with the general public.

Tr. 35. At step four, the ALJ found that Coats could not perform her past relevant work as a mail carrier or sales clerk. Tr. 41.

At step five, based on the testimony of the VE and other evidence, the ALJ determined Coats could perform other work existing in significant numbers in the national and local economy despite her impairments, including "assembler small products I" and "electronics assembler." Tr. 42. Accordingly, the ALJ concluded Coats was not disabled under the Act. *Id.*

*Standard of Review*

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id*

*Discussion*

Coats alleges the ALJ erred by improperly assessing: (1) examining physician Dr. Leinenbach's medical opinion; (2) Coats' subjective symptom reports; and (3) Coats' right-sided handling and fingering limitations.

I. Dr. Leinenbach's Opinion

Opinions regarding the ultimate issue of disability are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Dr. Derek Leinenbach examined Coats in December, 2012, and assessed various physical limitations. Tr. 575. Dr. Leinenbach opined that Coats could stand and walk for up to four hours per day, and sit for up to six hours per day. *Id.* He believed that Coats was limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently due to Coat's chronic lower back pain and decreased range of motion. *Id.* He restricted Coats to occasional climbing, balancing, stooping, kneeling, crouching, or crawling because her chronic shoulder pain, with her left shoulder pain greater than the right, decreased her range of motion. *Id.* Finally, the doctor

5- OPINION AND ORDER

assessed "occasional reaching, handling, fingering, and feeling with the left arm due to decreased range of motion of the shoulder as well as chronic pain in the left shoulder. She could likely reach, handle, finger and feel more frequently with the right upper extremity." *Id.*

The ALJ gave partial weight to Dr. Leinenbach's assessment. Tr. 39. The ALJ declined to adopt Dr. Leinenbach's suggested standing/walking restriction because Coats demonstrated normal gait and normal toe/heel walking throughout the examination, as well as a normal straight leg raise. Tr. 39. Coats argues that the ALJ erred by failing to adopt Dr. Leinenbach's standing/walking restriction. However, even if the ALJ's less restrictive standing/walking assessment was adopted in error, the error was harmless because it was inconsequential to the ultimate decision that Coats was not disabled. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Coats' RFC required that she have the option "to alternate sitting or standing positions as needed throughout the day while remaining on task." Tr. 35. The jobs identified at step five encompass the rejected standing/walking restriction, which limited Coats to sitting for up to six hours per day and to standing/walking for up to four hours per day.

The ALJ also declined to adopt Dr. Leinenbach's recommended restrictions for Coats' left shoulder. Dr. Leinenbach found that Coats had "decreased range of motion of the shoulder as well as chronic pain in the left shoulder" and could only occasionally reach, handle, finger, and feel with her left arm. Tr. 580. The ALJ declined to adopt the recommendation because there was no objective evidence of left shoulder impingement. Tr. 39. The record, however, shows a left shoulder MRI performed in July, 2012, that revealed a labral tear, and subsequent Hawkins and Neers testing demonstrated positive signs of impingement, contrary to the ALJ's finding. Tr. 431-32. This evidence contradicts the ALJ's reasoning for rejecting Dr. Leinenbach's suggested shoulder restriction.

A deeper review of the record suggests that the ALJ rejected the doctor's recommendation due to a lack of objective evidence of *continuous* left shoulder impingement. An impairment must last at least 12 continuous months to be considered severe. 20 C.F.R. §§ 404.1509, 416.909.

There is some confusion as to whether it is Coat's left or right shoulder that is impaired. Coats apparently injured her left shoulder in June 2012, when she "reached out to get something" and felt a popping sensation accompanied by pain. Tr. 431. However, evidence of left shoulder pain occupies a small portion of the record, from approximately June 2012, until December 2012. *See* Tr. 433, 575-580. The ALJ specifically addressed Coats' left shoulder at the disability hearing in 2014 by asking Coats if her left shoulder or right shoulder gave her trouble. Tr. 59, 61. Coats responded that her right shoulder gave her trouble, not her left, and her attorney agreed. *Id.*

Dr. Leinenbach performed the consultative examination during the six-month period when Coats' left shoulder was impaired. Tr. 580. Based on the comparatively short time period Coats' left shoulder affected her, and her testimony that it did not impair her enough to warrant discussion in the hearing, the ALJ did not err in rejecting the suggested restriction.

II. Subjective Symptom Reports

Plaintiff asserts that the ALJ erred by rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

7- OPINION AND ORDER

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Coats argues the ALJ erred in identifying inconsistencies in her testimony about the severity of her anxiety and depression. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (the ALJ may reject a plaintiff's subjective symptom testimony due to inconsistencies with the medical record).

Coats alleged that her anxiety and depression affected her concentration, ability to complete tasks, and focus. Tr. 227-34. The ALJ noted several instances contradicting Coats' allegations: in 2010, Coats reported her anxiety medication "worked really well;" in January 2012, she reported significantly improved sleep, motivation, and mood; in June 2012, her anxiety was "very much improved;" and in July 2013, Coats stated her medications worked well and she did not want to make any medication changes. Tr. 339, 504, 602. While Coats cites contradictory evidence indicating episodes of anxiety and depression, the ALJ's interpretation of the record is supported by substantial evidence.

Additionally, Coats alleges that her IBS requires frequent restroom breaks. She testified that she was let go from her temporary job because she used the restroom too frequently and for too long. Tr. 65, 67. In considering Coats' IBS allegations, the ALJ cited generally conservative treatment notes, including dietary intervention and over-the-counter medication, as well as prescription medication with dietary advice. Tr. 335-36, 355. The ALJ further noted that an

8- OPINION AND ORDER

EGD[1] and colonoscopy revealed only mild gastritis, a CT scan revealed no acute findings, and Coats' prescription medication was reported as relieving the majority of her symptoms. Tr. 395, 418. While Coats argues that she struggles with IBS, the ALJ agreed that her IBS was a severe impairment affecting her ability to work. However, the ALJ's determined the functional effects of Coats' IBS were not as severe as alleged. Although Coats argues for a different interpretation of the evidence, the ALJ's findings were rational and are supported by the record; therefore, the Court must uphold them. *Burch*, 400 F.3d at 679.

The ALJ found that Coats' activities of daily living were inconsistent with her symptom testimony. *Orn*, 495 F.3d at 639. At the disability hearing, Coats testified that her daily activities include "sit[ting] in space" and that she "[doesn't] do a whole lot all day." Tr. 73. In her disability evaluation form, Coats alleged that she cannot perform any house or yard work, cannot pick things up, and does not socialize with others. Tr. 228-32. However, the ALJ noted that Coats' allegations were undermined by her doctor's recommendation that she exercise daily using non-weight bearing exercises, as well as using "pulleys" for physical therapy. Tr. 588. As such, the ALJ properly found that Plaintiff was capable of more physical activity than she alleged.

The ALJ also noted that Coats cared for her son, a paranoid schizophrenic, and her husband, a 70-year-old with "various physical ailments" including arthritis. Tr. 37. While Coats argues that her family members all cared for each other, the record shows Coats performed the lion's share of caretaking. For example, she told a physician that she "[t]akes care of her crippled husband and son who has mental health issues" and that her son "takes a lot of her attention [and] worry" and "she's the major caretaker" for her husband. Tr. 522, 526.

---

[1] Esophagogastroduodenoscopy

9- OPINION AND ORDER

Additionally, Coats indicated that she has difficulty talking and hearing, which the ALJ properly found unsupported by the record. Tr. 233. Accordingly, the ALJ's findings regarding Coats' activities of daily living were supported by substantial evidence.

The ALJ noted that secondary gain is a reason to doubt Coats' symptom allegations. "Secondary gain means external and incidental advantage derived from an illness, such as rest, gifts, personal attention, release from responsibility, and disability benefits." *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). Here, it appears Coats waited until her financial situation worsened before seeking SSI. At a psychiatric appointment in December 2011, the physician noted that "[Coats] is working towards getting on disability but has been supported by her husband. However, now that they are going through a divorce she does not know what she is going to do for financial support." Tr. 572. Coats alleged a disability onset date of 2007; she waited nearly four years before commencing the disability application process, and was prompted to do so not by worsening mental or physical impairments but a worsening financial situation. In reaching findings, an ALJ is "entitled to draw inferences logically flowing from the evidence." *Tommasetti*, 533 F.3d at 1040. Furthermore, if the ALJ's interpretation of the evidence is rational the court is bound to uphold that interpretation, even if the evidence is susceptible to equally compelling interpretations. *Batson*, 359 F.3d at 1196. The ALJ's inference that Coats sought secondary gain after her financial situation worsened, and that this motive called her subjective symptom testimony into doubt, is not unreasonable.

In summary, to the extent the ALJ erred in evaluating Coats' testimony about other physical impairments, such as her right shoulder and lower back, any error was harmless, as the ALJ gave numerous reasons supported by substantial evidence to doubt Coats' subjective testimony. *Batson*, 359 F.3d at 1197.

III.   Right-Sided Handling and Fingering Limitations

The ALJ formulated a RFC restricting Coats to "no more than frequent handling and fingering on the right." Tr. 35. Coats argues that the ALJ erroneously assessed medical evidence related to her right hand, resulting in a flawed RFC and flawed hypotheticals at step five.

"The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041-42. Dr. Leinenbach, the examining physician, opined that Coats was limited to frequent handling and fingering with the right hand. Tr. 580. Drs. Neal Berner and Richard Alley, reviewing physicians, assessed a limitation to occasional handling and fingering with the right hand. Tr. 103, 119-20. The ALJ did not expressly adopt Dr. Leinenbach's recommended handling and fingering restriction, but nonetheless limited Coats to frequent handling and fingering. Tr. 35, 40. Regarding the opinions of Drs. Berner and Alley, the ALJ stated that the "limited" handling and fingering assessment offered by the physicians was vague and inconsistent with the record.[2]

Coats argues that the ALJ failed to explain why she adopted Dr. Leinenbach's restriction over that of the reviewing physicians. However, the ALJ gave partial weight to Dr. Leinenbach's overall opinion, and cited evidence in the record to support the frequent handling/fingering limitation. Tr. 38. The ALJ noted that "[Coats] could grip and hold objects securely to the palm by the last three digits. She could grasp and manipulate both large and small objects with the first three digits. The claimant's thumbs functioned with normal opposition. There was no evidence of myotonia or grip release or evidence of localized tenderness, erythema, or effusion. No evidence existed of diminution of function with repetition or of spasticity or ataxia." Tr. 38. The ALJ noted that after surgery on her right wrist, Coats was "doing very well with right wrist pain. No pain in wrist. Still has finger stiffness." Tr. 36, 433. The ALJ's rational interpretation of

---
[2] The reviewing physicians' first notation restricted Coats to "limited" handling and fingering, but the next page clarified that the physicians meant "occasionally." It is unclear if the ALJ read the clarification.

11- OPINION AND ORDER

Coats' right hand limitations is supported by the medical record and the opinion of an examining physician. *See Batson*, 359 F.3d at 1196 (if the evidence supports more than one rational interpretation, the court is bound to uphold the ALJ's interpretation). Therefore, the ALJ did not err in her assessment of Coats' right hand limitations.

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Coats' application for SSI is AFFIRMED.

DATED this 31st day of January, 2018.

s/ Michael J. McShane<br>
Michael McShane<br>
United States District Judge